[Cite as *State v. Williams*, 2013-Ohio-3410.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                                  :

    Plaintiff-Appellee,                      :        CASE NO.   CA2012-08-080

                                    :        O P I N I O N
    - vs -                                                              8/5/2013

                                      :

GEORGE R. WILLIAMS,                      :

    Defendant-Appellant.                    :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CR27846


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

John J. Helbling, 6539 Harrison Avenue, #124, Cincinnati, Ohio 45247, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, George R. Williams, appeals from his convictions and sentence in the Warren County Court of Common Pleas for three counts of gross sexual imposition, all felonies of the third degree. For the reasons discussed below, we affirm in part, reverse in part, and remand this matter to the trial court.

**I. FACTS**

{¶ 2} Appellant was indicted on November 14, 2011 on five counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). The charges arose out of allegations that appellant had sexual contact with his step-granddaughters, K.R. and S.R., both of whom were less than 13 years of age at the time of the offenses. Specifically, the indictment alleged that between April 25, 2009 and February 2011, appellant touched K.R.'s breasts (count one) and vaginal area (count two), and S.R.'s vaginal area (count four) and buttocks (count five) while at the victims' residence on South River Street in Franklin, Warren County, Ohio. The indictment further alleged that between February 2011 and June 2011, appellant touched K.R.'s vaginal area at the victim's residence on Clark Street, in Franklin, Warren County, Ohio (count three).

{¶ 3} A bench trial was held in June 2012. At trial, the state presented testimony from the two victims, their mother, Christina B., one of their older sisters, D.B., and Detective Stephen Figliola and Officer Jordan Colvin of the City of Franklin Police Department. Christina testified that she has lived on Clark Street in Franklin, Ohio with her five daughters, "Nicki" (age 18), D.B. (age 17), J.B. (age 15), K.R. (age 10), and S.R. (age 9) since February 17, 2011. Prior to residing on Clark Street, Christina and her daughters rented a home on South River Street in Franklin, Ohio. Christina testified that her mother, Peggy W., and appellant, to whom Peggy was married, lived with her from time to time at both locations, and there were instances when appellant was left home alone with her children. Christina stated that as of June 2011, neither Peggy nor appellant resided in Christina's home on Clark Street.

{¶ 4} Christina testified that on the evening of August 30, 2011, she and her two youngest daughters, S.R. and K.R., were downstairs in the living room when K.R. confessed that appellant had inappropriately touched her and S.R. Christina stated that K.R. was embarrassed and upset when she was explaining what happened to her, and that S.R., who

was also upset and crying, had nodded her head during K.R.'s statement as if to say that the touching had also happened to her. Christina explained that she immediately called the Franklin Police Department and officers responded to her house later that evening. Neither K.R. nor S.R. were able to tell the officers what had occurred with appellant, but both children were able to give a statement when interviewed at the Child Advocacy Center in Middletown, Ohio a few days later.

{¶ 5} On cross-examination, Christina admitted she and her mother had a difficult relationship. She also admitted that they had fought in early August 2011 after Peggy allowed Christina's oldest daughter Nicki to live with her and appellant. However, at the time K.R. disclosed the molestation on August 30, 2011, Christina stated she and Peggy were "getting along a little bit" and she had no reason to want to "get back" at appellant by encouraging her children to make up a story about appellant inappropriately touching them. Christina expressly denied telling K.R. or S.R. to manufacture abuse allegations against appellant. However, Christina did admit during cross-examination that in 1998 she had accused the father of her daughter D.B. of inappropriately touching D.B. about a week after D.B.'s father had filed for custody. No charges were ever filed against D.B.'s father and he later gained custody of D.B. Christina also admitted on cross-examination that she had been convicted of child-endangerment in 2005 and her children had been removed from her custody at that time.

{¶ 6} K.R. was then called to the stand, and she testified she was ten years old at the time of trial and would be entering the fifth grade. K.R. stated appellant had lived with her at two different houses, one on South River Street and one on Clark Street. K.R. testified that when she was living at the South River Street home, appellant "touched my private spot. He touched * * * my private spot from down here and he went by the pee spot and rubbed up and down. * * * He rubbed on my pee spot up and down." When asked to clarify what she

meant by "private spot," K.R. stated that a private spot is "where you go pee." According to K.R., appellant would touch her "private spot" under her clothes with his hand while they were on the couch watching TV in the living room. K.R. also stated that appellant touched her "private spot" on the couch in the living room of the Clark Street residence. K.R. explained that when the touching occurred S.R. would be in the room, but she would be sitting farther away from them on the couch. K.R. said appellant only touched her "private spot" when Christina and Peggy were gone from the house and her older sisters were upstairs in their room. K.R. testified that after appellant was done touching her, he told her not to tell anyone about what had happened. K.R. further testified that while at the house on South River Street, she saw appellant touch S.R.'s "private spot" with his hand, but did not know if it was underneath or on top of S.R.'s clothing.

{¶ 7} K.R. explained that she finally told Christina about what appellant had been doing because she "thought it was time" and she knew "it was the right thing to do." K.R. also testified that she was worried that appellant might "do it" to her three-year-old cousin who was now living with appellant. On cross-examination, K.R. admitted that when asked by the Child Advocacy Center representative why she finally told Christina about what appellant had been doing, she had responded, "because once [Christina and Peggy] got in a fight and then I thought next time whoever gets in a fight with mommy, I'm going to tell on him. And the next time I told her." K.R. expressly denied fabricating the events, and she testified that the only thing Christina had instructed her to say when she testified at trial was the truth.

{¶ 8} Following K.R.'s testimony, S.R. was called to the stand. S.R. testified that she was nine years old at the time of trial and would be entering the fifth grade. She stated that while she was living on South River Street, appellant touched "[p]laces he's not supposed to touch." S.R. explained that while on the couch in the living room, appellant touched her "front part," which she described as her private place where she "goes potty." S.R. stated

- 4 -

that appellant used his hand to touch her "front part" on top of her clothing, and that he would move his hand back and forth. Appellant told her not to tell about what had occurred or "something bad [would] happen." S.R. stated she saw appellant touch K.R.'s "front part" too. According to S.R., neither Christina nor Peggy was home when appellant touched her.

{¶ 9} S.R. admitted on cross-examination that she had only told Christina about the touching after Peggy and Christina got into a fight. However, S.R. stated that she was telling the truth about what appellant had done and Christina had never instructed her to make up allegations against appellant as a means of "get[ting] back at [appellant] for something."

{¶ 10} D.B. and Officer Colvin were called to the stand to testify about the victims' demeanor on August 30, 2011. D.B. stated that she was upstairs in her home on Clark Street when her mother yelled for her to come downstairs. Upon arriving downstairs, she found Christina, S.R., and K.R. visibly upset. All three were crying, S.R. was trying to hide, and K.R. was covering her face. D.B. stated that K.R. originally did not want to tell her about the touching, but "she eventually [told]" her. S.R., however, would not talk to D.B. about the events. Officer Colvin, who responded to the scene later that evening, testified that S.R. and K.R. did not want to speak about the events and they "shied away" from him whenever he attempted to question them.

{¶ 11} Detective Figliola testified that he was able to observe S.R. and K.R.'s interviews at the Child Advocacy Center on September 2, 2011. He described K.R. as quiet, soft spoken and, "kind of more * * * drawn back a little bit as she was speaking about what was happening." Similarly, he observed that S.R. appeared more withdrawn and bashful when being questioned about appellant. Following the victims' interviews at the Child Advocacy Center, Detective Figliola arranged an interview with appellant. During the course of this interview, Detective Figliola felt that appellant had admitted to wrongdoing when appellant stated that "he could have" accidently touched areas he should not have when

tickling the children, but "if [he] did, [he] didn't know it."

{¶ 12} At the close of the state's case, appellant moved for a Crim.R. 29 acquittal on all counts. The trial court granted the motion as to counts one and five, but denied the motion on counts two, three, and four. Thereafter, appellant presented evidence in his defense, which included his own testimony and testimony from various members of Christina and the victims' family, former employers of Christina, former caseworkers from Butler County Children Services who had dealt with Christina, and William Allen, the father of D.B. Appellant sought to elicit testimony demonstrating that Christina was a vindictive, abusive individual who coached, induced, or otherwise coerced her daughters into levying allegations against appellant as a means of striking back at Peggy.

{¶ 13} At trial, Allen testified that in 1998, approximately one week after he sought custody of his daughter D.B., Christina made claims that he had inappropriately touched D.B. According to Allen, Christina approached five different law enforcement agencies seeking to find someone willing to move forward on her complaint. Allen testified that no charges ever arose out of Christina's claims, and he was eventually awarded custody of D.B.

{¶ 14} Derrick W., Christina's brother and Peggy's son, testified at trial that he had lived with Christina on South River Street, and during the time he was living there, he never saw appellant alone with K.R. or S.R. He did, however, observe Christina being physically, mentally, and emotionally abusive to her children. He characterized Christina as a manipulative and vindictive person who frequently tried to "get even" with people who had upset her.

{¶ 15} Four different caseworkers from Butler County Children Services were also called to testify. These caseworkers testified that Christina had a history with Children Services and there were instances when Christina had lost custody of her children. One caseworker testified that in July 2005, she observed a cigarette burn under the eye of S.R.

Another caseworker testified that throughout Christina's history with Children Services there had been reported concerns about Christina's tendency to make false reports to Children Services and the police. Another case worker noted that Christina failed to provide truthful responses to questions presented during the course of a psychological assessment.

{¶ 16} Appellant's wife, Peggy, also testified on behalf of his defense. Peggy stated that in August 2011, she and Christina got into an argument regarding Christina's treatment of her oldest daughter, Nicki. Peggy stated that she had observed Christina punch Nicki, pull Nicki's hair, and tell Nicki to hurry up and grow up so that she could get out of Christina's house. Nicki moved into Peggy's home shortly after the argument, which caused tension between Peggy and Christina, and Christina threatened to "even the score." Less than two weeks later, S.R. and K.R. came forward with their claims that appellant inappropriately touched them. Peggy expressed her belief that such claims were being levied against appellant by S.R. and K.R. because the girls feared their mother, who is abusive towards them. Peggy believed Christina convinced K.R. and S.R. to lie about events so that she could hurt Peggy by "tak[ing] away the only thing [she] has left good in [her] life, [her] husband."

{¶ 17} Peggy also testified that she and appellant did not live with Christina at the South River Street residence. Peggy testified that she and appellant only stayed at the South River Street apartment briefly so that they could help Christina pack to move to the house on Clark Street. Peggy testified that during the time she and appellant stayed with Christina, regardless of whether it was the South River Street home or the Clark Street home, appellant was never left alone with S.R. or K.R. Peggy testified that she was "always" with him and never observed him inappropriately touching S.R. or K.R.

{¶ 18} Appellant took the stand in his own defense and testified that he has never touched K.R. or S.R.'s private parts. Appellant believed the allegations that he

inappropriately touched S.R. and K.R. were brought out of Christina's vindictiveness in an effort to get even with Peggy because Peggy allowed Christina's eldest daughter to move into her home. Appellant stated he has no interest in touching S.R. or K.R. in a sexual manner. Appellant admitted that he would engage in "tickle play" with the girls, but he claims he only touched S.R. and K.R. on their ribs. Appellant also testified that when he and Peggy stayed with Christina, he was never apart from his wife.

{¶ 19} Following appellant's testimony, the defense renewed its Crim.R. 29 motion for acquittal on the remaining counts. The trial court denied the motion, and closing arguments were held. Thereafter, the trial court found appellant guilty of gross sexual imposition as specified in counts two, three, and four of the indictment. In reaching its guilty finding, the trial court specifically stated the following:

> THE COURT: * * * There is no doubt in my mind that [Christina] is a big fat liar. There is no doubt whatsoever that she would be more than willing for Mr. Williams to go to prison to prove a minor point on her behalf.
>
> * * *
>
> I have given this careful consideration. And I have basically discounted anything that [Christina] had to do with this. But I don't believe these little girls are fabricating this, sir.

{¶ 20} On August 21, 2012, appellant was sentenced to five years of community control with potential 36-month prison terms on counts two and three to be served concurrently with each other but consecutively to a 36-month prison term on count four, for a total of 72 months, if appellant violates the terms of his community control. Appellant now appeals, raising four assignments of error. For ease of discussion, we will address appellant's first, second, and third assignments of error together.

## II. ANALYSIS

{¶ 21} Assignment of Error No. 1:

- 8 -

{¶ 22} THE TRIAL JUDGE ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF GROSS SEXUAL IMPOSITION WITHOUT SUFFICIENT EVIDENCE.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL JUDGE ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF GROSS SEXUAL IMPOSITION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 25} Assignment of Error No. 3:

{¶ 26} THE TRIAL JUDGE ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIS MOTIONS FOR ACQUITTAL UNDER OHIO RULE OF CRIMINAL PROCEDURE 29.

{¶ 27} In his first, second, and third assignments of error, appellant argues that the trial court erred by denying his Crim.R. 29(C) motion for acquittal on counts two, three, and four, that his convictions for gross sexual imposition were not supported by sufficient evidence, and that his convictions were against the manifest weight of the evidence. Specifically, appellant argues that the trial court's "refusal to acknowledge Christina's manipulations and physical abuse propensities against the minors as a catalyst for their fabrications established the tipping point where the trier of fact lost its way." Appellant also contends that the state failed to present evidence establishing that his alleged actions were "for the purpose of sexually arousing or gratifying" either himself of the victims, as required by R.C. 2907.01(B).

{¶ 28} Crim.R. 29(C) permits a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 9 (12th Dist.). "This court reviews a trial court's decision on a Crim.R. 29(C) motion for acquittal using the same standard as that used to review a sufficiency-of-the-evidence claim."

- 9 -

*Id.*; *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 17; *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 26.

{¶ 29} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Grinstead* at ¶ 10. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 30} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in

extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 31} Appellant was convicted on three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 32} After reviewing the entire record, weighing inferences and examining the credibility of witnesses, we do not find that appellant's convictions for gross sexual imposition were against the manifest weight of the evidence. Even disregarding Christina's testimony altogether, there was sufficient, credible evidence for the court to conclude that appellant had engaged in sexual contact with the minor victims. K.R.'s and S.R.'s testimony demonstrated that at the time of the touching, the victims were not married to appellant and they were both less than 13 years of age. K.R.'s testimony that appellant rubbed her "private spot" under her clothing, first at the home on South River Street and then later at the home on Clark Street, and S.R.'s testimony that appellant touched her "front part" while at the South River Street residence, is evidence that appellant touched K.R.'s and S.R.'s erogenous zones, specifically their genitals.

{¶ 33} Furthermore, as to the issue of whether the state presented evidence that appellant touched K.R. or S.R. for the purpose of sexual arousal or gratification, we note that

"there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25; *In re D.S.*, 12th Dist. Warren Nos. CA2004-04-036, CA2004-04-046, 2005-Ohio-1803, ¶ 19; *State v. Oddi*, 5th Dist. Delaware No. 02CAA01005, 2002-Ohio-5926, ¶ 45. "Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *Gesell*. Furthermore, in determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. *Id.*

{¶ 34} In the case sub judice, we find there was sufficient evidence to allow the trial court to infer that appellant's motive in touching K.R.'s "private spot" and S.R.'s "front part" was sexual arousal or gratification. S.R. and K.R. testified that appellant rubbed their genitals "up and down" and "back and forth" only when other adults were absent from the home and he instructed them not to tell anyone about the touching. Such evidence supported an inference that appellant's actions in touching the minor victims' genitals was for the purpose of sexually arousing or gratifying himself as contemplated by R.C. 2907.01(B). *See Gesell* at ¶ 23-26.

{¶ 35} Finally, while appellant has denied having any sexual contact with the minor victims, claiming that the victims' claims are fabrications arising out of "Christina's manipulations" in an effort to "get even" with Peggy, it is clear that the trial court found S.R.'s and K.R.'s testimony to be credible. "Although a reviewing court looks at the record anew when considering whether a verdict at trial is against the manifest weight of evidence, the trial court, not the appellate court, is in the best position to evaluate testimony and determine the credibility of witnesses." *State v. Guzzo,* 12th Dist. Butler No. CA2003-09-232, 2004-Ohio-4979, ¶ 13. Here, the trial court obviously found K.R.'s and S.R.'s testimony to be credible and chose to believe their version of events over appellant's proffered version. In doing so,

the trial court clearly stated on the record that it discounted Christina's testimony given Christina's propensity to be a "big fat liar."  It is well-established that when "conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *Id.*

{¶ 36} Accordingly, given the evidence presented, we find that the trial court did not clearly lose its way and that the evidence presented at trial did not weigh heavily in favor of acquittal.  Appellant's convictions for gross sexual imposition were not against the manifest weight of the evidence.  As a result of this finding, we necessarily conclude that the state presented sufficient evidence to support the court's finding of guilt and to overcome appellant's Crim.R. 29(C) motion as to counts two, three, and four.  Accordingly, appellant's first, second, and third assignments of error are overruled.

{¶ 37} Assignment of Error No. 4:

{¶ 38} THE TRIAL JUDGE ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY SENTENCING HIM TO A CONSECUTIVE PRISON TERM UNDER COUNT FOUR.

{¶ 39} In his fourth assignment of error, appellant contends the trial court erred by ordering consecutive sentences if he violates the terms of his community control without making the appropriate findings as required by R.C. 2929.14(C)(4).  The state contends, however, that appellant received a community control sentence, not a consecutive sentence, and that the trial court was therefore not required to make any findings as contemplated by R.C. 2929.14(C)(4).  Rather, the state asserts that the trial court was merely required to comply with the requirements of R.C. 2929.19(B)(4) by informing appellant of the specific prison term that may be imposed *if* he violates his community control, which the court did by informing appellant of the 72-month "ceiling on the potential prison term."

{¶ 40} In a recent opinion, this court had the opportunity to consider when it is ripe for

a reserved sentence to be challenged; that is, when the sentence is first imposed or when community control is later revoked and the defendant is ordered to serve the reserved sentence. In *State v. Painter*, 12th Dist. Clermont No. CA2012-04-031, 2013-Ohio-529, ¶ 18, we determined that a "sentence is imposed when it is pronounced," and the sentence is, therefore, immediately capable of being reviewed. *Accord State v. Clay*, 12th Dist. Madison No. CA2011-12-016, 2012-Ohio-5011, ¶ 17-20 (relying on R.C. 2929.01(DD) and (EE), this court found that a penalty and punishment were imposed on the defendant when he initially received his sentence). "While an imposed sentence may be stayed or otherwise held in abeyance, as is the case when the [defendant] is placed on community control, it is nevertheless sufficiently established for purposes of appeal." *Painter* at ¶18. Accordingly, pursuant to our holding in *Painter*, the time for a defendant to challenge the imposition of reserved consecutive sentences is on direct appeal of the judgment entry that initially sets forth the reserved sentence.

{¶ 41} Our decision in *Painter* was inapposite of this court's previous decisions in *State v. Sneed*, 12th Dist. Butler No. CA2004-06-153, 2005-Ohio-1078 and *State v. Madaffari*, 12th Dist. Butler No. CA2004-08-193, 2005-Ohio-3625. In *Sneed and Madaffari*, the defendants were sentenced to community control, with consecutive prison terms reserved. *Sneed* at ¶ 3; *Madaffari* at ¶ 2. After the defendants violated the terms of their community control and were ordered to serve their reserved consecutive sentences, the defendants appealed, arguing that the trial court was required to make the requisite statutory findings to impose consecutive sentences at the initial sentencing hearing. *Sneed* at ¶ 5 and 10; *Madaffari* at ¶ 2 and 12. We rejected the defendants' arguments, stating that "[t]he sentencing statutes under R.C. Chapter 2929 indicate that findings and reasons, if applicable, must be given when a prison sentence is *imposed*." *Sneed at ¶ 10; Madaffari* at ¶ 14. "Thus, it follows that a trial court is required to make the statutory findings and supporting reasons under R.C. 2929.14[C](4), not

- 14 -

when it sentences a defendant to community control, but when it actually imposes a consecutive prison term." *Madaffari* at ¶ 14.

{¶ 42} Given our holding in *Painter* and *Clay* that a sentence is imposed when it is first pronounced, we hereby overrule *Sneed* and *Madaffari* to the extent that those cases indicate that a reserved sentence is not imposed until after revocation of community control. The time for a defendant to challenge the imposition of reserved consecutive sentences is on direct appeal of the judgment entry which initially sets forth the sentence.

{¶ 43} As appellant's reserved consecutive sentence has been legally pronounced and thus imposed, we review appellant's sentence to determine whether the imposition of the reserved consecutive sentence is clearly and convincingly contrary to law. *See State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6-7; R.C. 2953.08(G)(2).

{¶ 44} In 2011 Am.Sub.H.B. No. 86 ("H.B. 86"), the General Assembly revived the requirement that a trial court make certain factual findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 8. A trial court must now engage in a three-step analysis and make certain findings before imposing consecutive sentences pursuant to R.C. 2929.14(C)(4). *Id.* at ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(C)(4). Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 45} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *Smith* at ¶ 26, citing *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110828, 2012-Ohio-3349, ¶ 16. In imposing consecutive sentences, "the trial court is not required to state any talismanic language" or otherwise give reasons explaining its findings. *State v. Oren*, 12th Dist. Madison No. CA2012-05-010, 2013-Ohio-531, ¶ 25; *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 86. Nevertheless, the record must reflect that the court made the requisite findings. *Id.*

{¶ 46} After reviewing the record, it is clear that the trial court did not make any of the findings required by R.C. 2929.14(C)(4) before imposing the reserved consecutive sentence. At the sentencing hearing, the court merely announced the sentence, stating:

THE COURT: All right. On Count two, reserving 36 months in prison. Count three, reserving 36 months in prison. Those two run concurrent. Count four, reserving 36 months in prison. That runs consecutive. I'm place him on community control for a period of five years.

Because the trial court failed to comply with R.C. 2929.14(C)(4) by neglecting to make any of the required findings before imposing the reserved consecutive sentence, we find that appellant's sentence is clearly and convincingly contrary to law. Accordingly we vacate appellant's sentence and remand the case for resentencing. *See Hubbard* at ¶ 87.

- 16 -

{¶ 47} Appellant's fourth assignment of error is sustained.

## III. CONCLUSION

{¶ 48} Appellant's convictions for gross sexual imposition are affirmed. We hereby vacate that portion of the trial court's judgment ordering that appellant's reserved sentence be served consecutively and remand this matter to the trial court for resentencing. On remand, the trial court shall consider whether a reserved consecutive sentence is appropriate under R.C. 2929.14(C), and, if so, it shall make the proper findings on the record. In all other respects, the trial court's sentence is affirmed.

{¶ 49} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

S. POWELL and PIPER, JJ., concur.