[Cite as *State v. Plata*, 2014-Ohio-449.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                :          CASE NO. CA2013-05-049

                                       :          O P I N I O N
    - vs -                                              2/10/2014

                                       :

ADRIAN JOEL PLATA,                      :

    Defendant-Appellant.               :

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12 CR 28711

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Adrian Joel Plata, appeals his convictions in the Warren County Court of Common Pleas for grand theft of a motor vehicle, tampering with records, and falsification. For the reasons stated below, we affirm appellant's convictions.

{¶ 2} On November 13, 2012, appellant was indicted on one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), one count of tampering with records in

violation of R.C. 2913.42(A)(1), and one count of falsification in violation of R.C. 2921.13(A)(5). The charges arose out of allegations that on October 3, 2012 through October 10, 2012, appellant, acting with purpose to deprive the owner of a motor vehicle, a 2001 Mazda Millenia (Mazda), exerted control over the vehicle without the consent of the owner, Michael Hodge. The state also contended that on October 9, 2012, appellant tampered with records and committed falsification when he obtained a duplicate certificate of title (duplicate title) for the Mazda after falsely claiming that the original certificate of title (title) had been lost.

{¶ 3} A one-day jury trial was held on April 8, 2013. The facts, as developed during trial, were largely disputed. Essentially, the state contended that on October 3, 2012, Plata sold the Mazda to Hodge for $1,450 and signed the title to the vehicle over to Hodge. Hodge did not take possession of the vehicle at this time, however, as it was inoperable. When Hodge returned days later to retrieve the vehicle, it was gone. Appellant denied selling the vehicle to Hodge and claimed he had merely hired Hodge to perform mechanical work on the Mazda.

{¶ 4} The state presented testimony from several witnesses. First, the state called Hodge, who testified that on October 2, 2012, he saw an advertisement on Craigslist for a Mazda Millenia for sale for $1,500. Hodge responded to the advertisement and spoke with appellant. The two agreed to meet in Lebanon, Ohio so Hodge could inspect the vehicle. On October 3, 2012, Hodge, along with his friend, Brandon Allen, met appellant and followed him to a house where the vehicle was located. After inspecting the Mazda, Hodge and appellant negotiated a sale price of $1,450. The title of the vehicle was also discussed. Hodge explained that he inspected the title and asked for appellant's identification to ensure it matched the vehicle. After being satisfied that title belonged to appellant and matched the Mazda, Hodge testified he paid appellant $1,450 in cash. Hodge also testified appellant

signed over the title to him and provided him with a key to the Mazda. Although the title was signed by appellant, his signature was not notarized.[1] Hodge testified that because the Mazda was currently inoperable, appellant agreed to allow Hodge to leave the vehicle at the house in Lebanon until the necessary repairs could be completed. Hodge further testified that he planned to have the title notarized by appellant once the repairs were complete.

{¶ 5} According to Hodge, he arranged for his mechanic to repair the vehicle, and on October 9, 2012, it was ready to be picked up. On that same day, Hodge and appellant spoke by telephone. During this conversation, appellant inquired whether Hodge had gotten the title notarized and transferred into his name. Hodge testified he told appellant that he had not, but had planned on doing it later that day.

{¶ 6} On the evening of October 9, 2012, Hodge, Allen, and Allen's girlfriend, Bethany Shelton, returned to Lebanon to retrieve the Mazda. When they arrived at the house, the Mazada was gone. Hodge contacted appellant who claimed to not know anything about the whereabouts of the vehicle. The police were called, and Hodge filed a complaint with the City of Lebanon Police Department. Hodge also testified that on October 10, 2012, he went to the Bureau of Motor Vehicles to check on the status of the Mazda's title. He was informed that the title he possessed was void because a duplicate title for the Mazda had been issued.

{¶ 7} Brandon Allen testified next. Allen testified he accompanied Hodge on both October 3 and again on October 9. He stated he overheard the negotiations for the car and witnessed Hodge giving appellant cash and appellant, in return, giving Hodge a key to the vehicle on October 3. Allen and Shelton both also testified regarding the events of October

---

1. According to trial testimony, if a person brings in a title where the signature of the person selling the vehicle is not notarized, title cannot be transferred, and the person would be turned away.

9. Both testified that Hodge contacted appellant, who told Hodge that he did not do anything with the car and that he should call the police.

{¶ 8} The state also presented testimony from Detectives Josh Holbrook and John Wetzel of the City of Lebanon Police Department who investigated Hodge's complaint. Detective Holbrook testified that he began his investigation by reviewing appellant's Facebook page. A print-out of appellant's Facebook page was admitted into evidence as an exhibit. Holbrook testified appellant posted the following entry on September 22, 2012: "4 Sale/Parting out running 2.3 miller cycle supercharged engine 210hp runs great with $1500 put into it with receipts to prove it. Also nice wheels that some1 wants hmu with a offer." The post also contained a photograph of the Mazda. In addition, Holbrook testified that on October 3, 2012, appellant posted on Facebook: "Just sold my mazda salty af about it."

{¶ 9} Detective Wetzel investigated Hodge's complaint by taking statements from Hodge, Allen, Shelton, and appellant. On October 10, 2012, appellant came to the police department and wanted to speak with Wetzel. Wetzel testified that appellant told him to "go ahead and arrest me for stealing my own car." Wetzel explained that he was still investigating the complaint and had no intentions of arresting appellant at that time; however, Wetzel did interview appellant regarding Hodge's complaint. During this interview, Wetzel first questioned appellant about the duplicate title. According to Wetzel, appellant claimed he had hired Hodge to work on the car and left a key with Hodge. Appellant further explained he had signed the original title intending to sell the vehicle at a later date and had left the title in the glove box of the car and became concerned that Hodge would have the car "re-titled" in his name. However, by the end of the conversation, appellant's story regarding the duplicate title changed. Appellant later told Wetzel he did not remember whether he signed the title, and furthermore, if the title was signed, then Hodge had forged his signature. Wetzel also testified that during the interview, he confronted appellant with his October 3 Facebook post

which stated that he had just sold his Mazda. Appellant denied the existence of the Facebook post and two days later the post was deleted from the account.

{¶ 10} Both Holbrook and Wetzel participated in the arrest of appellant on October 12, 2012. The detectives testified appellant was found driving another vehicle. Upon searching this vehicle, the duplicate title for the Mazda was found. After questioning by Wetzel, appellant eventually revealed the location of the Mazda. The Mazda was found in a barn behind a house in Clearcreek Township, Ohio.

{¶ 11} Kim Brown, an employee with the Bureau of Motor Vehicles, Warren County Title Division (BMV), also testified. Brown testified that on October 9, 2012, appellant completed an application for a duplicate title. Both the application and the duplicate title were admitted into evidence. Brown testified that the application indicated appellant had lost the original title. After issuing the duplicate title, appellant asked Brown what he needed to do to report the vehicle stolen. Brown advised appellant to contact the local police.

{¶ 12} Appellant also testified at trial on his own behalf. Appellant's version of the events differed from the descriptions provided by the previous witnesses. Appellant testified his Mazda sustained significant body damage when he was involved in a collision in March 2012. According to appellant, he originally posted an advertisement on Craigslist for the same type of vehicle, a Mazda Millenia, so that he could place "the engine in a new body and be done with it." According to appellant, he was unable to locate a similar vehicle that he could use for parts to fix his Mazda. Appellant testified that Hodge contacted him regarding the Mazda and offered to repair it. He further testified the two agreed to meet so Hodge could provide an estimate for the repairs of the car. Appellant confirmed that he and Hodge did meet on October 3, 2012, but stated that Allen was not with him. Rather, appellant testified Hodge had his daughter with him. Appellant also testified Hodge offered to purchase the Mazda when they were looking at it, but appellant declined. According to

appellant, the two then discussed Hodge's plans to repair the Mazda and the cost of those repairs. Appellant testified it was agreed that Hodge would repair the vehicle for $400 to $600, and that he would pay Hodge when the work was complete. According to appellant, he never gave Hodge the title but did provide him with a key to the Mazda.

{¶ 13} As for obtaining the duplicate title, appellant testified he sought the duplicate title after becoming concerned that Hodge would take the signed title from the glove compartment and claim he owned the Mazda. According to appellant, he had signed the title in March after the accident because the insurance company was going to "collect the car." When Hodge stopped returning appellant's calls and requests for updates on the car, appellant testified he went back to the car and found the title was missing from the glove compartment. As a result, appellant went to the BMV on October 9, 2012, to obtain a duplicate title. Appellant further testified it was Brown who wrote that the title had been lost on the application and that he had only signed it. Moreover, after his discussion with Brown, appellant testified he felt reassured there would be no problems because the title was in his name and Brown had indicated Hodge had an invalid title as it was not notarized. When questioned regarding the inconsistency between his version of the events and the other witnesses' versions, appellant stated they were lying.

{¶ 14} After hearing all the evidence, the jury found appellant guilty on all three counts. Appellant was sentenced to three years of community control, 90 days in the county jail with credit for 50 days already served. Appellant appeals raising two assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY ALLOWING INSUFFICIENT EVIDENCE AS A MATTER OF LAW, [SIC] TO SUSTAIN THE STATE'S BURDEN OF PROOF.

{¶ 17} In his first assignment of error, appellant asserts his conviction for grand theft of a motor vehicle was not supported by sufficient evidence. We find no merit to this argument.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Hoskins*, 12th Dist. Warren No. CA2013-02-013, 2013-Ohio-3580, ¶ 16. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} Appellant was charged and convicted of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1). R.C. 2913.02(A)(1) provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent." In challenging the sufficiency of his conviction, appellant contends the state failed to prove that Hodge was the owner of the Mazda. Essentially, appellant argues he had superior right to the car over Hodge because the certificate of title was in his name. He contends that based on R.C. 4505.04, he was the owner of the vehicle, and as the owner, he could not be convicted of stealing "his own car."

{¶ 20} R.C. 4505.04(B)(1) provides, in relevant part: "[N]o court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced: (1) By a certificate of title, an assignment of a certificate of title * * *." Contrary to appellant's arguments, title ownership in a specific person

other than the defendant is not an element of a theft offense. *State v. Blank*, 12th Dist. Clermont No. CA96-01-004, 1996 WL 451058, *2 (Aug. 12, 1996). The Supreme Court of Ohio has specifically stated: "In a prosecution for theft of a motor vehicle under R.C. 2913.02, R.C. 4505.04 does not mandate that a certificate of title be produced by the prosecution to demonstrate that the person deprived of the motor vehicle is the "owner" of the motor vehicle within the meaning of R.C. 2913.01(D)." *State v. Rhodes*, 2 Ohio St.3d 74 (1982), paragraph one of the syllabus. Accordingly, although introduction of a certificate of title is admissible to provide evidence of ownership in a prosecution for theft of a motor vehicle, such proof is not required. Rather, in determining the ownership of the vehicle, R.C. 2913.01(D) controls. *See Blank* at *2.

{¶ 21} Under R.C. 2913.01(D), an owner is "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." Thus, the important question is not whether the person from whom the property is stolen was the actual owner, but rather whether the defendant had any lawful right to possession. *Rhodes* at 76. As this court has recognized, "[t]he essence of the crime of theft is the wrongful taking rather than a particular ownership, and it is sufficient that a thief knows that the property is not his to take * * *." *Blank* at *2.

{¶ 22} The state presented evidence at trial that appellant posted on Facebook and Craigslist a listing which indicated the Mazda was for sale. After responding to the advertisement, Hodge met with appellant to view the vehicle, the two negotiated a sale price, and Hodge ultimately paid appellant $1,450 in cash. There was also testimony that appellant provided Hodge with the signed original title, as well as, a set of keys to the Mazda. The jury could have concluded from this evidence that appellant sold the Mazda to Hodge on October 3, 2012. At that point, Hodge became the owner of the Mazda and appellant no longer had a

lawful right to possession of the vehicle. In addition, the jury could have concluded, based on the evidence presented, that appellant acted with purpose to deprive Hodge of the Mazda, without his consent, when he removed or, at his direction, had the Mazda removed from the house in Lebanon and placed in the barn in Clearcreek Township.

{¶ 23} After reviewing the record in a light most favorable to the state, we find that the jury could have found the essential elements of grand theft of a motor vehicle proven beyond a reasonable doubt. Accordingly, there was sufficient evidence to support appellant's grand theft conviction. Appellant's first assignment of error is therefore, overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED BY CONVICTING THE DEFENDANT/APPELLANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 26} Although appellant's second assignment of error is framed as a challenge to the manifest weight of the evidence supporting his convictions for tampering with records and falsification, appellant also sets forth arguments challenging the sufficiency of the evidence for such convictions. Because "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency" we will consider both arguments. *See State v. Jones,* 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 27} As described more fully above, in determining whether the evidence presented at trial is sufficient to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Smith* at ¶ 25, quoting *Jenks* at paragraph two of the syllabus.

{¶ 28} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side

of the issue rather than the other." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 30. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide[.]'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Williams* at ¶ 30.

{¶ 29} Appellant was convicted of one count of tampering with records in violation of R.C. 2913.42(A)(1), which provides: "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud shall * * * falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." Appellant was also convicted of one count of falsification, in violation of R.C. 2921.13(A)(5), which provides: "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when * * * [t]he statement is made with purpose to secure the issuance by a governmental agency of a license, permit, authorization, [or] certificate * * *."

{¶ 30} In arguing that his convictions were against the manifest weight of the evidence and based on insufficient evidence, appellant essentially contends that he is the "record

owner of the vehicle." He therefore contends that "he could not defraud himself out of the car" or obtain ownership from anybody else because he "already owned the car." As described above, the jury could have reasonably concluded from the evidence presented at trial that Hodge became the owner of the Mazda when Hodge gave appellant cash for the vehicle. Moreover, ownership is not an element of either falsification or tampering with records.

{¶ 31} In addition, after reviewing the record, we cannot say that the jury clearly lost its way in finding the evidence presented by the state supported appellant's convictions for tampering with records and falsification. At trial, Hodge testified that on October 3, 2012, he gave appellant $1,450 in cash for the Mazda. In addition, appellant signed the original title and gave it to Hodge. The state also presented evidence that on October 9, 2012, appellant went to the BMV and requested a duplicate title for a vehicle he longer had any lawful right to possess. On the application for the duplicate title, appellant stated that the original title had been lost. From this evidence, the jury could have inferred that appellant made such a false statement with the intent to induce Brown to issue a duplicate title for the Mazda and thereby nullify the original title given to Hodge. Brown confirmed that she issued the duplicate title based on appellant's representation that the original title had been lost. Based on the foregoing evidence and testimony, we do not find that the jury clearly lost its way in finding appellant committed tampering with records and falsification. Therefore, because we cannot say appellant's convictions created such a manifest miscarriage of justice that his conviction must be reversed, we find no reason to disturb the jury's finding of guilt.

{¶ 32} As we have determined that appellant's convictions for falsification and tampering with records were not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the guilty verdicts in this case. *See State v. Jones,* 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Accordingly,

appellant's second assignment of error is overruled.

**{¶ 33}** Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.