[Cite as *State v. Bailey*, 2011-Ohio-6526.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA7 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| DAVID BAILEY, | : | |
| | : | **RELEASED 12/07/11** |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Carol Ann Curren, Greenfield, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for appellee.
_____

Harsha, P.J.

**{¶1}** Claiming that the jury's verdict was against the manifest weight of the evidence, David Bailey appeals his conviction for four counts of endangering children. Because the jury found him not guilty of illegally manufacturing methamphetamine, Bailey asserts he cannot be guilty of endangering children by placing them in the vicinity of the illegal manufacture of that drug. However, in order to convict Bailey the state did not have to prove he actually manufactured the drug himself. Rather, it only had to prove that he allowed the children to be within 100 feet of any illegal manufacture of methamphetamine when he knew the act was occurring. Because the state satisfied that burden by proof beyond a reasonable doubt, there was sufficient evidence to convict him of endangering children.

**{¶2}** Bailey also argues that the trial court erred in imposing consecutive jail sentences for his convictions because his crimes did not merit that punishment.

However, Bailey's sentence is not clearly and convincingly contrary to law and the record reveals that the trial court properly considered the statutory framework, including the sentencing factors concerning recidivism and the seriousness of the crime. Nor did the court abuse its discretion in applying those factors.

{¶3}    Finally, Bailey claims that his consecutive sentences were improper because his co-defendant was only sentenced to a community control sanction, although she was convicted of the same crimes. However, the record shows that the co-defendant agreed to testify against Bailey and entered into a plea agreement with the state in exchange for the recommended sentence. And unlike Bailey, she has no criminal history that appears in the record. Because of those and other differences surrounding their convictions, we conclude that the trial court did not abuse its discretion by sentencing him to four consecutive two year terms.

## I. FACTS

{¶4}    David Bailey and his fiancée, Casey Scarberry, were staying with their friend, Summer Porter, and her four children. While Porter left her children alone in the home with Bailey and Scarberry, a fire occurred in an upstairs bedroom. Luckily, all four children, along with Bailey and Scarberry, escaped from the house unharmed.

{¶5}    Subsequently, the grand jury indicted Bailey with one count of illegal manufacturing of drugs, specifically methamphetamine, in violation R.C. 2925.04(A) and four counts of endangering children in violation R.C. 2919.22(B)(6). His case proceeded to a jury trial.

{¶6}    At trial Scarberry testified that prior to the fire she was watching Porter's four children in the downstairs living room, while Bailey was in the upstairs bedroom

with the door locked.  About one-half hour before the fire started, she heard someone enter the house, yell for Bailey and go upstairs.  However, Scarberry admitted that she never saw the person and didn't know who it was.  After the fire began, she stated that Bailey came running downstairs alone.  She also admitted to taking a sleeping aid that day and had "little recollection" of that afternoon.  She further testified that Bailey was "in the business" of methamphetamine, but she never witnessed him cook the drug.

{¶7}    Todd Whited, a city of Hillsboro police officer, testified that when he arrived at the Porter home, he saw a jar burning on the sidewalk in front of the house. He stated that based on his experience, the burning jar is consistent with manufacturing methamphetamine.

{¶8}    Jeff Murphy, also a city of Hillsboro police officer, testified that he was called to Porter's house after the fire for a methamphetamine lab clean-up.  He explained that he is certified to perform such a clean-up and is trained to identify methamphetamine.  After his arrival, he was directed by Officer Whited to a broken mason jar on the sidewalk in front of the home.  He indicated that the jar appeared to have been on fire and contained a powdery, crystal substance with soot on it.  Officer Murphy testified that based on his training and experience the jar was an item that you would typically see in the illegal manufacturing of methamphetamine.

{¶9}    Officer Murphy also testified that they found a "burn pit" in the backyard of Porter's home.  Based upon his training and experience, he stated that burn pits are "commonly found at locations where methamphetamine is being produced, and a way to get rid of unwanted property and trash" used in the production of methamphetamine. Officer Murphy testified that in the burn pit at Porter's home, he found a salt container,

coffee filters, a nasal decongestant box, opened lithium batteries, a Drano bottle, and "blister packs", the packaging that holds medication. Officer Murphy stated that all these items are associated with the illegal manufacture of methamphetamine, but admitted he had no idea when the items were placed in the burn pit. He further explained that the contents in the burn pit were "probably 15 feet from the back of the house."

{¶10} Officer Murphy also testified that he found plastic tubing and bottles in the burn pit. Specifically, he found the plastic tubing with an orange cap going through it, which based on his training and experience is known as a "gas generator" used to manufacture methamphetamine. Additionally, he noted that methamphetamine manufacturers typically pry the ends off batteries and take the casing off the outside to expose a thin strip of lithium metal that is extracted for the manufacturing of methamphetamine. He also indicated that "lithium is reactive with moisture" and "if it becomes wet it will catch fire."

{¶11} The state introduced a burnt thermos bag from Porter's house. Officer Murphy testified that he found the bag in the corner of the upstairs bedroom, next to the window and it contained radios and plastic tubing. Murphy also stated he removed what appeared to be a Coleman fuel can and Liquid Fire from the bedroom and that both are used to manufacture methamphetamine.

{¶12} On cross examination, Murphy admitted he did not attempt to determine who purchased the items found in the burn pit. He also stated he was instructed not to submit the items associated with methamphetamine production to the lab for forensic analysis. He testified that no samples were taken from the items to determine whether

methamphetamine was present because he didn't suspect any of the items contained "finished product."

{¶13} Bailey testified that on the afternoon in question he was in Porter's home with Scarberry and Porter's four children. Prior to the fire, Bailey said he was alone in the upstairs bedroom. He claimed that approximately two to three minutes before the fire began, two individuals, Doug Thackston and JD Ralston, arrived at the home. Both men knocked on the bedroom door. Thackston then entered the bedroom and took a jar out of a bag he brought with him. Thackston unscrewed the lid and it "immediately burst into flames." Bailey said Thackston dropped the burning jar and ran out of the bedroom.

{¶14} Bailey testified he picked up the jar and threw it out the open bedroom window, but the fire had already spread throughout the room. He then ran downstairs and told Scarberry and the kids to get out of the house. Bailey admitted he had a "personal history" with methamphetamine, but denied ever manufacturing it or ever witnessing anyone manufacture the drug in Porter's home.

{¶15} The jury found Bailey guilty of four counts of endangering children, one count for each of Porter's children, and not guilty of the illegal manufacture of methamphetamine. The trial court sentenced Bailey to two years in prison on each count of endangering children, with the sentences to run consecutively. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶16} Bailey presents two assignments of error for our review:[1]

---

[1] Appellant has characterized his attack on the trial court's judgment as "issues" and /or "legal arguments" rather than assignments of error. We have converted them to the proper form.

**{¶17}** "THE TRIAL COURT ERRED TO THE DETRIMENT OF THE DEFENDANT/APPELLANT WHEN IT SENTENCED THE DEFENDANT/APPELLANT TO CONSECUTIVE PRISON TERMS FOR THE SAME EVENT."

**{¶18}** "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### III. MANIFEST WEIGHT OF THE EVIDENCE

**{¶19}** Initially, we address Bailey's second assignment of error. When considering whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotation marks omitted.) *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 193.

**{¶20}** "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, at ¶32, citing *State v. Issa* (2001)*, 93 Ohio St.3d 49, 67, 2001–Ohio–1290, 752 N.E.2d 904. "If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence." *State v. Tyler*, 4th Dist. No. 10CA3183, 2011-Ohio-3937, at ¶ 43, citing *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, at syllabus (superseded by state constitutional amendment on other

grounds). Thus, we will grant a new trial "only in the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotation marks omitted.) *Drummond*, supra, at ¶ 193.

{¶21} Bailey argues that because the jury found him not guilty of illegally manufacturing methamphetamine in violation of R.C. 2925.04, he cannot be found guilty of endangering children by putting them in proximity to the manufacturing of that drug. Specifically, he claims that because he was acquitted of illegally manufacturing methamphetamine, the jury "more likely than not" believed he participated in some sort of illegal assembly in violation of R.C. 2925.041. However, he argues that the state did not present any evidence linking him to the burn pit in the backyard of Porter's house, and thus it did not prove that he violated R.C. 2925.041. Accordingly, he contends that his conviction of endangering children is against the manifest weight of the evidence. We disagree.

{¶22} Bailey was convicted of four counts of endangering children in violation of R.C. 2919.22 (B)(6), which provides: "No person shall * * * allow the child to be on the same parcel of real property and within one hundred feet of * * * any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division."

{¶23} R.C. 2925.04 provides: "No person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance," and R.C. 2925.041 provides: "No person shall knowingly assemble or possess one or more

chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II * * *."

{¶24} Here, the evidence reasonably supports the conclusion that Bailey allowed Porter's four children to be within 100 feet of either the illegal manufacture of methamphetamine, in violation of R.C. 2925.04 or one of the chemicals used in the manufacture of methamphetamine, in violation of R.C. 2925.041. A conviction for endangering children only requires that Bailey allowed Porter's children to "be on the same parcel of real property and within one hundred feet of * * * *any* act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, *whether or not any person is prosecuted for or convicted* of the violation of section 2925.04 or 2925.041 of the Revised Code * * *." R.C. 2919.22(B)(6) (emphasis added). The statute does not require that Bailey himself committed the violation of R.C. 2925.04 or 2925.041, rather it only requires that he knowingly allowed the children to be within 100 feet of any violation.

{¶25} The testimony presented at trial supports the conclusion that someone in the home was manufacturing methamphetamine or illegally assembling or possessing chemicals for the manufacture of methamphetamine. Bailey himself admitted that Thackston brought a jar that burst into flames into the upstairs bedroom. Both Officers Murphy and Whited testified that the jar was consistent with the illegal manufacture of methamphetamine. Officer Murphy further testified that based on his training and experience, he found plastic tubing and what appeared to be a Coleman fuel can and Liquid Fire in the upstairs bedroom, which were also consistent with the manufacture of methamphetamine. Finally, Officer Murphy testified that the burn pit in the backyard of

Porter's home contained numerous items associated with the manufacture of methamphetamine.

{¶26} Moreover, during sentencing Bailey's attorney admitted it was "pretty clear that the jury's verdicts are not inconsistent" and that the jury determined that Bailey was "aware of activities that were occurring at least at times" in Porter's house concerning methamphetamine production. The testimony of Bailey himself, along with the testimony Officers Whited and Murphy, support the conclusion that Bailey allowed Porter's children to be within 100 feet of either the manufacture of methamphetamine or one or more chemicals that may be used to manufacture methamphetamine, when he knew the act was occurring.

{¶27} Accordingly, we cannot say that the trial court lost its way or created a manifest miscarriage of justice when it found Bailey guilty of four counts of endangering children. Therefore, we overrule Bailey's second assignment of error.

## IV. BAILEY'S SENTENCE

{¶28} Bailey claims that the trial court erred in sentencing him to four consecutive terms of two years for each of his endangering children convictions because the court believed he was guilty of the illegal manufacturing of methamphetamine. In support of that argument he points to the guidelines set forth in R.C. 2929.12, concerning the seriousness of the crime and recidivism factors and insists they do not merit such a severe sanction. He also argues the fact that Scarberry was convicted of endangering children but was sentenced to only a community control sanction supports his contention that the trial court acted vindictively.

### A. Standard of Review

**{¶29}** "[A]ppellate courts must apply a two-step approach when reviewing felony sentences. First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 26.

### 1. Clearly and Convincingly Contrary to Law

**{¶30}** In examining all applicable rules and statutes, the trial court must consider R.C. 2929.11 and 2929.12 when imposing its sentence. *Kalish*, supra, at ¶ 13. In addition, the sentencing court must also be guided by statutes that are specific to the case itself. Id.

**{¶31}** Bailey was convicted of endangering children in violation of 2919.22(B)(6), a third degree felony. Former R.C. 2929.14(A)(3) mandates that the prison term for a felony of the third degree shall be one, two, three, four or five years.[2] However, R.C. 2919.22(E)(3)(a) requires a mandatory prison term of no less than two years, when the defendant is convicted of endangering children in violation of R.C. 2919.22(B)(6) and the drug involved is methamphetamine.

**{¶32}** Here, the trial court's decision was not contrary to law. The sentencing entry from which Bailey appeals confirms that "the court has considered the record, oral statements, any victim impact statements, and the pre-sentence report, as well as all factors required by Section 2929.12 ORC." The sentencing entry also states that "[a]fter

---

[2] R.C. 2929.14(A)(3) was recently amended by Section 1, Am.Sub.H.B. No. 86. The former statute was in effect at the time of Bailey's conviction and sentencing, and therefore is the statute that we will apply on appeal.

weighing the seriousness and recidivism factors, prison is consistent with the purposes and principles of Section 2929.11 ORC * * *." It is also clear that Bailey's two year prison sentence for each count of endangering children is with the prescribed statutory limit set forth by R.C. 2929.14(A)(3) and R.C. 2919.22(E)(3)(a). Accordingly, the sentence is not clearly and convincingly contrary to law.

### 2. Abuse of Discretion

{¶33} Next, we must consider whether the trial court abused its discretion by sentencing Bailey to consecutive sentences that result in an eight year prison term. To find an abuse of discretion we must conclude "that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotation marks omitted.) *Kalish*, supra, at ¶ 19.

{¶34} Bailey first argues that the guidelines set forth in R.C. 2929.12 concerning the seriousness of the crime and recidivism factors weigh in his favor because the children were unharmed and he had only previously spent time in prison for burglary. R.C. 2929.12(A) provides that the trial court must consider the factors set forth in divisions (B) and (C) relating to the seriousness of the defendant's conduct, as well as the factors set forth in divisions (D) and (E) relating to the likelihood of recidivism, along with any other relevant factors. Furthermore, in considering the factors set forth in R.C. 2929.12, the trial court has "the discretion to determine the weight to assign a particular statutory factor." *State v. Arnett* (2000), 88 Ohio St.3d 208, 215, 2000-Ohio-302, 724 N.E.2d 793.

{¶35} "[T]rial courts *have full discretion to impose a prison sentence* within the statutory range * * *." (Emphasis in original; internal quotation marks omitted.) *Kalish*, supra, at ¶11. Therefore, "[t]rial courts have the discretion to impose consecutive

sentences without stating their reasons for doing so." (Internal quotation marks omitted.) *State v. Voycik*, 4th Dist. Nos. 08CA33 & 08CA34, 2009-Ohio-3669, at ¶23.

**{¶36}** After reviewing the record, we are unable to conclude that the trial court abused its discretion by imposing consecutive sentences upon Bailey. As we have already stated, the record indicates that the trial court considered the sentencing factors contained in R.C. 2929.12. In addition, the court may consider "any other relevant factors." R.C. 2929.12(B). Bailey's sentence is within the permissible statutory range. Moreover, the court imposed the mandatory minimum sentence for each victim. At the sentencing hearing, the trial court stated "I think that it is appropriate to impose sentence [sic] for each of the victims in this offense. And it is also I think appropriate given the circumstances of the fact that these children were all placed in danger by [Bailey's] actions * * *." The court also considered "that this is a mandatory sentence * * * and weighing of the fact that the children were not physically harmed, and that you did react in a way to try to save them * * * I'm going to follow the recommendation of the state and give you the minimum sentence of two years * * *. But, I'm going to order those to run consecutively, because there are four children involved." We find nothing in the court's application of R.C. 2929.12 that can be considered irrational, arbitrary or capricious. To the contrary, the courts analysis and conclusion are logical and fact based.

**{¶37}** Finally, Bailey argues that the court erred when it sentenced him to an aggregate eight year prison sentence because his co-defendant, Scarberry, pleaded guilty to endangering children but was only sentenced to a community control sanction.

He contends that Scarberry was just as culpable because "she lived in the house, did drugs around the children and was there when the fire broke out."

**{¶38}** R.C. 2929.11(B) states in relevant part that "[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." "The goal of sentencing guidelines is consistency, not uniformity." (Internal quotation marks omitted.) *State v. Ward*, 4th Dist. No. 07CA9, 2008-Ohio-2222, at ¶16. "Imposing consistent sentences requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable. * * * Under this meaning of consistency, two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment. * * * In fact, there is no requirement that co-defendants receive equal sentences." (Citations omitted; internal quotation marks omitted.) Id. at ¶17.

**{¶39}** We have held that "[a]n offender cannot demonstrate inconsistency merely by supplying a list of cases where other defendants in other cases received prison sentences that differed from his." (Internal quotation marks omitted.) Id. at ¶ 16. "Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes." *State v. Aguirre*, 4th Dist. No. 03CA5, 2003-Ohio-4909, at ¶ 50. We bear in mind that "[e]ach case is necessarily, by its nature, different from every other case-just as every person is, by nature, not the same." (Internal quotation marks omitted.) *Ward*, supra, at ¶ 16.

**{¶40}** In this case, the differences between Bailey and Scarberry's sentences are justified by the circumstances surrounding their convictions. Other than her

testimony at trial, we have no record of the charges brought against Scarberry or her convictions in this case. Scarberry testified that she reached a plea agreement with the state and in exchange for pleading to three counts of child endangering the state would recommend placing her into "STAR, which is a lock-down treatment facility." She also stated that as part of her plea agreement she would testify against Bailey. In addition, there is nothing in the record regarding Scarberry's drug usage or prior convictions.

**{¶41}** Unlike Scarberry, Bailey testified that he had a "personal history" with methamphetamine and his usage continued into the fall of 2010. Moreover, Bailey also testified that he was a convicted felon and at sentencing, the court acknowledged that he was currently serving a sentence for assault. Therefore, the circumstances surrounding his convictions are different from that of the co-defendant. The trial court did not abuse its discretion by imposing a greater sentence upon him.

**{¶42}** Accordingly, we overrule both of Bailey's assignments of error and affirm the judgment of the Highland County Court of Common Pleas.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Clerk of Courts to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Presiding Judge




**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**