[Cite as *State v. Dougherty*, 2014-Ohio-4760.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-12-014 |
| | : | O P I N I O N |
| - vs - | | 10/27/2014 |
| | : | |
| JOHN C. DOUGHERTY, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12CR011070

Martin P. Votel, Preble County Prosecuting Attorney, Eric E. Marit, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Wayne C. Staton, Timothy J. Meloy, 110 North Beech Street, Oxford, Ohio 45056, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, John Dougherty, appeals his conviction in the Preble County Court of Common Pleas for endangering children. For the reasons detailed below, we affirm.

{¶ 2} This case involves the operation of a methamphetamine lab operated at 9644 Stephen Young Road, Camden, Ohio. Charles Wyatt lived on that property, which was

owned by his father.

{¶ 3} On September 28, 2012, one of Wyatt's neighbors contacted police to report that strong chemical smells were coming from the direction of the property. Deputy Paul Plaugher of the Preble County Sheriff's Office interviewed the neighbor, and learned that such odors had been coming from the Wyatt property for several months. The neighbor also explained that cars would come and go from the property at all times of the day and night. The neighbor also stated that there was a large barn on the property that was equipped with an exhaust fan, and when the fan was turned on, the chemical smell emissions from the Wyatt barn became much stronger.

{¶ 4} Deputy Plaugher then went to the back of the neighbor's property, and from there could smell a strong chemical odor of what he believed to be ether. Based on this information, Deputy Plaugher drafted an affidavit to obtain a search warrant of the Wyatt property.

{¶ 5} A search warrant was subsequently granted and executed in the early morning hours of September 29, 2012. When law enforcement officers entered the Wyatt barn they discovered a methamphetamine lab with a substantial amount of finished methamphetamine, as well as various components used in the manufacture of methamphetamine, including lithium batteries, retrofitted propane tanks, and other chemicals necessary to the manufacturing process.

{¶ 6} During execution of the search warrant, appellant was standing immediately outside the barn containing the methamphetamine lab holding a flashlight. Appellant admitted to looking out for police because of a phone call tip he received from Wyatt, who was not on the property at the time of the search. Also on the property were Tennessa Miller (Wyatt's girlfriend) and Miller's three young children (Miller's children) who were sleeping in a trailer right next to the barn containing the methamphetamine lab.

{¶ 7} In an interview with Deputy Plaugher, appellant admitted that he had been inside the Wyatt barn that night and had handled the finished methamphetamine product. However, appellant claimed that he had no knowledge of the methamphetamine lab and any manufacture of methamphetamine was, in his mind, "out of sight, out of mind." Instead, appellant maintained that he was "just a dope head" that was on the property to perform chores in exchange for finished methamphetamine.

{¶ 8} Appellant was subsequently indicted on five counts for the illegal manufacture of drugs, illegal assembly or possession of chemicals for the illegal manufacture of drugs within the vicinity of a minor, aggravated possession of drugs, endangering children, and having drug paraphernalia.

{¶ 9} The case proceeded to a jury trial. Following the close of the state's evidence, appellant moved for acquittal based on insufficient evidence pursuant to Crim.R. 29 on all five counts. Following argument, the trial court granted appellant's request for acquittal on all counts except for the count of endangering children. At the conclusion of trial, the jury found appellant guilty of endangering children. Appellant now appeals, raising five assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM. RULE 29 MOTION FOR ACQUITTAL ON THE CHARGE OF ENDANGERING CHILDREN UNDER R.C. 2919.22(B)(6).

{¶ 12} Assignment of Error No. 3:

{¶ 13} THE STATE'S EVIDENCE WAS CONSTITUTIONALLY INSUFFICIENT TO SUPPORT A CONVICTION FOR ENDANGERING CHILDREN UNDER R.C. 2919.22 (B)(6).

{¶ 14} Assignment of Error No. 4:

{¶ 15} APPELLANT'S CONVICTION FOR A VIOLATION OF R.C. 2919.22 (B)(6) IS

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} In his first, third, and fourth assignments of error, appellant argues the trial court erred by denying his Crim.R. 29(C) motion for acquittal on the endangering children charge. Appellant also argues that his conviction for endangering children is not supported by sufficient evidence and is against the manifest weight of the evidence. We find no merit to appellant's argument.

{¶ 17} Crim.R. 29(C) permits a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 9 (12th Dist.). "This court reviews a trial court's decision on a Crim.R. 29(C) motion for acquittal using the same standard as that used to review a sufficiency-of-the-evidence claim." *Id*; *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 17.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 29. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} On the other hand, "a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

- 4 -

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Hibbard*, 12th Dist. Butler Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶ 10.

{¶ 21} While appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Wyatt*, 12th Dist. Preble No. CA2013-06-005, 2014-Ohio-3009, ¶ 40. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. "A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 22} Appellant was convicted on one count of endangering children. The crime of endangering children is set forth in R.C. 2919.22(B)(6), which provides:

> (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
>
> * * *
>
> (6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section

2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

{¶ 23} Appellant does not dispute that the Wyatt barn contained a methamphetamine lab, which constitutes an act in violation of R.C. 2925.04 or 2925.041. Appellant also does not dispute that Miller's three young children were on the property and within 100 feet of the methamphetamine lab.[1] Instead, this case turns on whether appellant's actions meet the definition of "allow" as contained in R.C. 2919.22(B)(6). Appellant argues that he cannot be guilty of the offense because he did not own or live on the property containing the methamphetamine lab and: (1) he had no knowledge that Miller's children were on the property; (2) even if he had knowledge that Miller's children were on the property, he still cannot be held responsible for endangering children because he did not have the relationship or authority that would permit him to remove the children from the property within the meaning of R.C. 2919.22(B)(6).

{¶ 24} The Ohio Revised Code does not specifically define the term "allow." "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute." *Id.*, quoting *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. Statutes should be interpreted in a way that avoids unreasonable or absurd results. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 20. It is presumed that the General Assembly intended a just and reasonable result in enacting a particular statute. R.C. 1.47. In determining legislative intent, the court should look at the language of the statute and ascertain the apparent purpose to be accomplished, and then adopt a construction that gives effect to that purpose. *State v. Martin*, 12th Dist. Brown No. CA99-09-026, 2000 WL 1145465, *5 (Aug. 14, 2000). Where a particular word employed in a statute is not defined, it

---

1. According to Deputy Plaugher's testimony, the trailer where the children were sleeping "was so close to the barn you could not open the barn door that swung out without hitting the [trailer] with the door."

will be accorded its common, ordinary, plain, everyday meaning. *State ex rel. Pennington v. Gundler*, 75 Ohio St.3d 171, 173 (1996).

{¶ 25} Black's Law Dictionary provides one definition of the term "allow" as "[t]o sanction, either directly or indirectly, as opposed to merely suffering a thing to be done; to acquiesce in; to suffer; to tolerate." *Black's Law Dictionary* (6th Ed.1990). As defined by Merriam-Webster's Online Dictionary and Thesaurus, the word "allow" means "to permit" or "to forbear or neglect to restrain." *Merriam-Webster's Online: Dictionary and Thesaurus*, http:// www.merriam-webster.com/dictionary/allow (accessed October 8, 2014).

{¶ 26} In the present case, the state first called Wyatt's neighbor, Mickey White, who originally reported the suspicious behavior at the Wyatt property to police. White testified that she had a clear view of the Wyatt property from her backyard and was aware who lived on the property, including Miller and Miller's three young children. White also acknowledged that, although appellant did not live on the Wyatt property, he was a frequent visitor of the property and his estranged wife and 14-year-old son lived on the property owned by Wyatt's father, albeit in a separate structure in a separate area of the property.[2]

{¶ 27} Next, the state called the investigating law enforcement officers who uncovered the methamphetamine lab in the Wyatt barn and also located the Miller children on the property. Agent Dwight Aspacher from the Ohio Bureau of Criminal Identification and Investigation presented testimony regarding the manufacture of methamphetamine and the evidence discovered during a search of the Wyatt barn. According to Agent Aspacher, the Wyatt barn was an active methamphetamine lab and the last manufacture of the drug occurred, at the latest, within 48 hours of the execution of the search warrant. Agent Aspacher's testimony, as well as photographs of the Wyatt barn confirm that the Wyatt barn

---

2. The record reflects that appellant is married to Wyatt's sister.

held, in plain view, various containers and implements used in the manufacture of methamphetamine, such as pseudoephedrine pills, batteries, coffee grinders, pill sludge, and a large exhaust fan. In addition, Captain Dean Miller of the Preble County Sherriff's Office testified that he detected the odor of anhydrous ammonia while walking through the barn.

{¶ 28} During Deputy Plaugher's testimony, the state played a recorded interview between appellant and Deputy Plaugher after appellant asked to speak with the Deputy. In his statements to Detective Plaugher, appellant admitted to entering the Wyatt barn on the night of the police raid and handling a bowl of finished methamphetamine. Appellant also stated that he knew Miller was asleep in the trailer adjoining the barn on the night of the police raid and knew that Miller had three young children. In addition, appellant also admitted that he would routinely perform work on the property in exchange for methamphetamine. On the night of the police raid, appellant stated that he was installing an outside light on the property in exchange for methamphetamine. Appellant also acknowledged that he had previously built a children's swing set on the property. Photographs of the trailer and barn introduced during appellant's jury trial show that the swing set was located next to the Wyatt barn and the area was littered with children's toys.

{¶ 29} Based on our review of the evidence, we find that appellant's conviction for endangering children is based on sufficient evidence and is not against the manifest weight of the evidence. Although it is true that appellant was not convicted of any crime related to the actual manufacture of the methamphetamine, the issue of whether appellant had an active involvement in the manufacture of methamphetamine is separate from the issue of whether appellant knew the manufacture of methamphetamine was occurring. Appellant "allowed," through acquiescence, the Miller children to be within 100 feet of the methamphetamine lab while he knew the manufacture of methamphetamine was occurring.

{¶ 30} A similar issue was addressed in *State v. Bailey*, 4th Dist. Highland No. 11CA7,

2011-Ohio-6526. There, Bailey and his fiancée were "staying" with their friend, Porter, and Porter's four children. *Id.* at ¶ 4. While Bailey and the fiancée were alone with the children, a fire erupted in the house as a result of a methamphetamine lab, which Bailey allegedly operated. *Id.* Bailey was later charged with one count of illegal manufacture of methamphetamine and four counts of child endangering. *Id.* at ¶ 5. The jury found Bailey guilty of the child endangering charges, but not guilty of the illegal manufacture of methamphetamine charge. *Id.* at ¶ 15. On appeal, Bailey argued that he could not be found guilty of endangering children because he was acquitted of the illegal manufacture charges. *Id.* at ¶ 21.

{¶ 31} In affirming Bailey's conviction for endangering children, the Fourth District Court of Appeals found R.C. 2919.22(B)(6) "does not require that [the offender] himself committed the violation of R.C. 2925.04 or 2925.041." *Id.* at ¶ 24. Instead, R.C. 2919.22(B)(6) "only required that he knowingly allowed the children to be within 100 feet of any violation." *Id.* Accordingly, the court affirmed Bailey's conviction because, even though appellant was not convicted of the illegal manufacture of methamphetamine, the evidence supported the jury's conclusion that appellant allowed the children to be within 100 feet of the methamphetamine operation when he knew the act was occurring. *Id.* at ¶ 26.

{¶ 32} While appellant presents a novel argument on appeal, we disagree with his suggestion that he cannot be found guilty of R.C. 2919.22(B)(6) because he did not live on the property and did not have the "relationship or authority" to exclude the Miller children from the property.

{¶ 33} First, this court has not previously imposed any requirement that a criminal defendant have any interest in the property in order to be found guilty of endangering children under R.C. 2919.22(B)(6). In *State v. Grundy*, 12th Dist. Warren No. CA2011-09-099, 2012-Ohio-3133, Grundy lived in Tim Baker's home along with Michelle Eibeck and

Eibeck's 14-year-old daughter. Grundy manufactured methamphetamine in Baker's garage. *Id.* at ¶ 3-5. In affirming Grundy's conviction for endangering children, we considered evidence that Grundy knew that the child resided in the house and the child was within 100 feet of the methamphetamine operation. *Id.* at ¶ 29-31. As such, we found that Grundy's conviction was supported by the manifest weight of the evidence. *Id.* ¶ at 31.

{¶ 34} The facts in *Grundy* are analogous to the present case, as neither Grundy nor appellant owned, leased, or rented the home, nor were the children involved in the case under the supervision of the defendant. Although it is true that Grundy did live on the property in question, which is distinguishable from the present case, the critical issue remains, whether Grundy, or appellant, allowed children to be within 100 feet of a methamphetamine lab when he knows the act is occurring.

{¶ 35} Second, the plain language of the statute does not impose a requirement for the state to prove that appellant had a special relationship or form of authority over Miller's children. Unlike subsection (A) of R.C. 2919.22, subsection (B) provides no corresponding obligation that the state prove an offender is the "parent, guardian, custodian, person having custody or control, or person in loco parentis of a child." R.C. 2919.22; *see also State v. McDade*, 6th Dist. Ottawa No. OT-06-001, 2007-Ohio-749, ¶ 54 (noting that the "conduct normally constituting the offense is manufacturing the volatile methamphetamine in the presence of (anyone's) children").

{¶ 36} Based on the facts of this case, we find appellant "allowed" the children to be near the methamphetamine lab within the meaning of R.C. 2919.22(B)(6). This is not a case involving an innocent bystander who happens to accidentally stumble across a methamphetamine lab and identifies children in the vicinity. The undisputed record reflects that the Wyatt barn contained an active methamphetamine lab and Miller's children were within 100 feet of the methamphetamine lab. Appellant admitted that he knew Miller was

asleep in the trailer on the night of his arrest and he knew that Miller had three young children. Appellant frequently went to the Wyatt property to essentially encourage the methamphetamine operation by "working for dope." Appellant admitted to being in the barn on the night of the police raid and handling a large glass dish containing finished methamphetamine. On the night of the raid, appellant was found standing directly outside of the barn with a flashlight and he admitted later that he was looking for police. Various law enforcement officers testified that the Wyatt barn had a distinct chemical smell consistent with the manufacture of methamphetamine. Indeed, the chemical smell was noticed by persons standing on the neighboring property. Photographs of the barn, which appellant admitted to entering, clearly show that the barn was riddled with instrumentalities consistent with a methamphetamine operation. Accordingly, we find there is more than sufficient evidence to support a finding that appellant knew the manufacture of methamphetamine was an ongoing operation and "allowed," through acquiescence, the Miller children to be within the vicinity of the methamphetamine lab.

{¶ 37} Moreover, as noted by the state in its brief, application of R.C. 2919.22 (B)(6) in the manner prescribed by appellant would lead to an absurd result. If appellant's contention were correct that he could not be held liable because he did not own the property and had no relationship or authority to exclude the children, applied to its logical extreme, "a person could walk into a random daycare center, setup a meth lab, and because he was not the parent of any child or an owner/administrator of the daycare, he could not be charged with child endangering." Accordingly, appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's first, third, and fourth assignments of error are hereby overruled.

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON ALL

- 11 -

THE ELEMENTS OF THE ALLEGED OFFENSE OF CHILD ENDANGERING UNDER [R.C.] 2919.22 (B)(6).

{¶ 40} In his second assignment of error, appellant raises two specific errors with regard to the mens rea requirement for endangering children under R.C. 2919.22(B)(6), which he asserts is "recklessness" by operation of R.C. 2901.21(B). First, appellant claims that his due process rights were violated because the indictment did not specify a mens rea requirement for endangering children. Second, appellant claims the trial court erred by failing to instruct the jury of the culpable mental state of "reckless" for the element of "allow." We find no merit to appellant's arguments.

{¶ 41} We begin by noting that R.C. 2919.22 does not explicitly or impliedly require proof of any culpable mental state for the "allow" element in subdivision (B)(6). Pursuant to R.C. 2901.21(B):

> When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

As a result, the Ohio Supreme Court, as well as other courts of appeals have found that recklessness is the culpable mental state for various offenses constituting the crime of endangering children. *State v. O'Brien*, 30 Ohio St.3d 122 (1987) (interpreting R.C. 2919.22[B][3]); *State v. Adams*, 62 Ohio St.2d 151 (1980) (interpreting R.C. 2919.22[B][2]); *see also State v. Colopy*, 5th Dist. Knox No. 2011-CA-3, 2011-Ohio-6120, ¶ 34 (interpreting R.C. 2919.22[A]).

{¶ 42} However, the Ohio Supreme Court recently clarified the applicability of R.C. 2901.21(B) in *State v. Tolliver*, Slip Opinion No. 2014-Ohio-3744. There, the Court specified:

> R.C. 2901(B) * * * applies only if "the section defining an offense

does not specify any degree of culpability." If the section already requires proof of a culpable mental state for any element of the offense in any division or subdivision, R.C. 2901.21(B) does not apply, and the state need prove culpability only as specified in the section.

*Id.* at paragraph one of the syllabus.

**{¶ 43}** Therefore, the text of R.C. 2901.21(B) identifies two conditions that must exist before a court can read recklessness into an offense. "First, the 'section' defining the offense must not specify 'any degree of culpability,' meaning that the section does not already require proof of a culpable mental state for any element of the offense in any division or subdivision. Second, the section must not plainly indicate a purpose to impose strict liability." *Id.* at ¶ 15 (citations omitted).

**{¶ 44}** In the present case, appellant was convicted of endangering children under R.C. 2919.22(B)(6), which provides:

> (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
>
> * * *
>
> (6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person *knows* that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

(Emphasis added.) Thus, unlike *O'Brien* and *Adams*, which involved other offenses constituting the crime of endangering children, R.C. 2919.22(B)(6) does specify a culpable mental state. The state is required to prove the offender allowed the children on the property * * * when the person *knows* that a violation of R.C. 2925.4 or 2925.041 is occurring. As a result, R.C. 2901.21(B) does not apply and recklessness is not read into the offense because

R.C. 2919(B)(6) does require proof of a culpable mental state for an element of the offense. Accordingly, recklessness was not required in the indictment or in the jury instructions.

{¶ 45} However, even if we were to find that "reckless" is a required element of R.C. 2919.22(B)(6), we would still find appellant's arguments unpersuasive.

## A. Indictment

{¶ 46} First, appellant's indictment provided him with effective notice of the charges against him, even if the state had been required to prove "recklessness." The Ohio Supreme Court has held that when an indictment fails to charge a mens rea element of the crime, but tracks the language of the statute describing the offense, the indictment provides the defendant with adequate notice of the charges against him and is therefore, not defective. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 45; *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 24. In so doing, the Court reasoned that a "criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible." *Horner* ¶ at 45; *Wesson* at ¶ 24.

{¶ 47} Here, the indictment "tracks" the language of R.C. 2919.22(B)(6) and specified:

> That, John Chancey Dougherty, on or between the 1st day of July, 2012 and the 29th day of September, 2012, in the County of Preble and State of Ohio, aforesaid, to a child under eighteen years of age, did, allow the child to be on the same parcel of real property and within 100 feet of, or in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within 100 feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code, when the person knows that the act is occurring, whether or not any person is prosecuted or convicted of the violation in section 2925.04 or 2925.041 of the revised code that is the basis of the violation of this division; this is in violation of Ohio Revised Code Section 2919.22(B)(6), entitled, "Endangering Children," a felony of the third degree, contrary to the statute in such case made and

provided; and against the peace and dignity of the State of Ohio.

Accordingly, appellant was not denied adequate notice of the charges against him and the

indictment was not defective.

## B. Jury Instruction

**{¶ 48}** Second, the trial court's jury instructions would not have amounted to plain

error. As previously noted, recklessness is not an element of R.C. 2912.22(B)(6). The trial

court's instruction for endangering children provided:

> The Defendant is charged with Endangering Children. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or between the 1st day of July, 2012 and the 29th day of September, 2012, and in Preble County, Ohio, the Defendant did allow a child under 18 years of age to be on the same parcel of real property and within 100 feet of any act in violation of section 2925.04 (Illegal Manufacture of Drugs) or 2925.041 (illegal Assembly or Possession of Chemicals for the Manufacture of Drugs) [sic] of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.
>
> Knowingly means that a person is aware of the existence of the facts and that his acts will probably cause a certain result to be of a certain nature.

Appellant did not object to this jury instruction at trial.

**{¶ 49}** "As a general rule, a defendant is entitled to have the jury instructed on all

elements that must be proved to establish the crime with which he is charged, and, where

specific intent or culpability is an essential element of the offense, a trial court's failure to

instruct on that mental element constitutes error." *State v. Wamsley*, 117 Ohio St.3d 388,

2008-Ohio-1195, ¶ 17, citing *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). The Ohio

Supreme Court has held, however, that the failure to instruct on each element of an offense

is not necessarily reversible as plain error. *State v. Cope*, 12th Dist. Butler No. CA2009-11-

285, 2010-Ohio-6430, ¶ 56; *Wamsley* at ¶ 1. "This caution is born of sound policy. For to

hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed." *Wamsley* at ¶ 28. Therefore, "[i]nstructions that, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal." *State v. Stevens*, 5th Dist. Morgan No. 07-CA-0004, 2008-Ohio-6027, ¶ 44.

{¶ 50} In the present case, the trial court's failure to include recklessness in the jury instruction would not have amounted to plain error because the instructions were sufficiently clear to permit the jury to understand the relevant law. The central issue presented to the jury was whether appellant allowed Miller's children to be on the property and within 100 feet of the methamphetamine lab based on his knowledge of the situation. In addition to the instructions provided by the trial court, which essentially mirrored the statutory language for the offense, the issues were clearly defined and argued by the parties during closing argument. Simply, the outcome of the trial would not clearly have been different but for the alleged error. *Cope*, 2010-Ohio-6430 at ¶ 62 (affirming a conviction involving an allegedly erroneous trial instruction where "the outcome of the trial would not clearly have been different but for the alleged error"). Accordingly, appellant's second assignment of error is overruled.

{¶ 51} Assignment of Error No. 5:

{¶ 52} THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY COMMENTING TO THE JURY ON THE SUFFICIENCY AND WEIGHT OF THE EVIDENCE PRIOR TO VERDICT.

{¶ 53} In his fifth assignment of error, appellant alleges the trial court committed reversible error by making improper comments regarding the sufficiency and weight of the evidence. As support, appellant references a statement made by the trial court, which

explained why the jury would only be considering one of the charges listed in the indictment:

> THE COURT: Have a seat. All right. The State has indicated -- the State asked that its exhibits be admitted and they have been admitted. We had a conference. As a result of that conference, the Court has dismissed the charges contained in Counts 1, 2, 3, and 5 of the indictment.
>
> It's simply been my judgment that the state has not proved the elements of each -- has not proved every element of each of those offenses beyond a reasonable doubt and it's my judgment that a finding of guilty based on the evidence presented is not possible.
>
> There is one Count that remains. That is the charge of Child Endangering. So you're going to hear an argument -- of course the State doesn't agree with my decision with respect to Counts 1, 2, 3, and 5. That happens. But there's going to be an argument with respect to the law on Count 4 only and the case will be submitted to the jury with respect to that charge. And you will determine whether or not there's sufficient evidence -- you will determine whether or not the State has proved each and every element of that charge beyond a reasonable doubt.

{¶ 54} Because appellant's trial counsel failed to object to the trial court's statement, this assignment of error is also subject to the plain-error standard of review. *State v. McCoy*, 12th Dist. Butler No. CA91-07-126, 1992 WL 185684, *3 (Aug. 3, 1992); *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 112. Under a plain error analysis, a reviewing court will not reverse a conviction based on a trial court's instruction "unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood*, 3 Ohio St.3d 12, 14 (1983).

{¶ 55} In exercising its duty to control criminal proceedings, a trial court must always be aware of the effect of its comments or remarks upon the jury. *Sharp* at ¶ 113, citing *State v. Wade*, 53 Ohio St.2d 182, 187 (1978), vacated and remanded on other grounds *Wade v. State*, 438 U.S. 911, 98 S.Ct. 3138 (1978). This is because "[i]t is well known * * * that juries are highly sensitive to every utterance by the trial judge." *State v. Gilbert*, 12th Dist. Butler No. CA2010-09-240, 2011-Ohio-4340, ¶ 63.

{¶ 56} Here, the trial court explained to the jury why they would only be considering one charge instead of the five charges originally listed in the indictment. The trial court's instruction further explained that the jury would have to determine whether the state proved the elements of count four (endangering children) beyond a reasonable doubt. Although the trial court could have used different words or further explained the process, it does not appear that these comments denied appellant a fair trial, especially in light of the evidence presented. *See, e.g., Sharp* at ¶ 117 ("While we believe that the trial court's instruction was far from desirable, we are unable to say the instruction so prejudiced appellant as to warrant reversal of his conviction").

{¶ 57} Moreover, the record reflects that the trial court did provide a cautionary instruction during jury instructions: "[i]f during the course of the trial the Court said or did anything that you consider an indication of the Court's view on the facts, you are instructed to disregard it." This court has previously held that "[s]uch an instruction directs the jury to disregard any statements that may have shown the trial court's view." *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 26; *Gilbert*, 2011-Ohio-4340 at ¶ 65. The presumption is the jury followed that instruction. *Id.* As such, appellant's fifth assignment of error is overruled.

{¶ 58} Judgment affirmed.

S. POWELL, J., concurs.

M. POWELL, J., dissents.

**M. POWELL, J., dissenting.**

{¶ 59} I respectfully dissent from the majority's resolution of the first assignment of error affirming the trial court's denial of appellant's Crim. R. 29 motion for acquittal as I do not

believe the state produced sufficient evidence that appellant "allowed" a child to be on the same parcel of property and within 100 feet of the methamphetamine laboratory involved in this case.

{¶ 60} To reiterate, R.C. 2919.22(B)(6) provides in pertinent part:

No person shall do any of the following to a child under eighteen years of age ***:
* * *
*Allow the child* to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code *when the person knows* that the act is occurring ***.

(Emphasis added.)

{¶ 61} As applied here, R.C. 2919.22(B)(6) prohibits a defendant from allowing a child to be on a property and within 100 feet of an illegal drug manufacturing operation (the "allow" element) when the defendant knows that the illegal operation is occurring (the "knowledge" element).  It is apparent from the juxtaposition of the two italicized phrases above that the General Assembly did not equate "allow" with "knowledge" when it applied the former term to the presence of a child on the property and the latter term to the presence of an illegal drug manufacturing operation on the property.  Something more than mere knowledge that a child is upon the same parcel of property and within 100 feet of the illegal drug manufacturing operation is required in order for one to violate the statute.

{¶ 62} The evidence is uncontroverted that appellant (1) was not a person with any authority to exclude persons from the property upon which the methamphetamine laboratory was located; (2) had no custodial or practical authority to remove Miller's three children from the property; and (3) was not responsible for the establishment or operation of the methamphetamine laboratory on the property (in fact, although not necessary under the statute, it is relevant to the "allow" element that appellant was acquitted of illegal manufacture

of drugs, and illegal assembly or possession of chemicals for the illegal manufacture of drugs within the vicinity of a minor).

{¶ 63} Rather than articulating what is required in order to satisfy the "allow" element, the majority instead focuses upon what the statute does not require (i.e., an interest in the property or a special relationship with the children involved). I note that many Ohio criminal statutes do not include the specifics as to how the statute may be violated. For instance, the theft statutes do not specify how one must "obtain or exert control" over the property of another, nor do the homicide statutes specify how one may "cause the death of another." That R.C. 2919.22(B)(6) does not specify the precise status and conduct of one accused of violating the statute does not mean that the accused's relationship with the child, his interest in the property, or his involvement with the establishment and operation of the illegal drug manufacturing are not relevant in determining whether the person "allowed" a child's presence on the property.

{¶ 64} In support of their claim that having a special relationship with the children involved is unnecessary to the commission of the offense, the majority cites the Sixth Appellate District's opinion in *McDade*, 2007-Ohio-749, for the proposition that the "conduct normally constituting the offense is manufacturing the volatile methamphetamine in the presence of (anyone's) children." *Id.* at ¶ 54. Again, what is necessary and what is relevant as to whether appellant "allowed" the children's presence on the property are entirely separate concepts. Furthermore, two factors undermine the applicability of *McDade* to this case. First, appellant, unlike the defendant in *McDade*, did not manufacture methamphetamine in the presence of anyone's children. The trial court acquitted appellant of involvement in the manufacturing of methamphetamine after finding the evidence against him so weak, that even construing that evidence in a light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the offense proven beyond

a reasonable doubt. Second, the quote cited by the majority from *McDade* did not in any respect address the "allow" element of the offense. Rather, the Sixth Appellate District's comment concerning the defendant's parental relationship with the children involved was in connection with the court's rejection of such a relationship as a proper seriousness factor under R.C. 2929.12(B)(6) for purposes of sentencing because it did not facilitate the offense.

**{¶ 65}** The majority relies upon three factors as having established the "allow" element of the offense: (1) appellant's knowledge that methamphetamine was being manufactured on the property, (2) appellant's acquiescence in the manufacture of methamphetamine on the property, and (3) appellant's knowledge that the children were nearby. First, proof of the separate and distinct "knowledge" element does nothing to establish the "allow" element. Second, knowledge that someone has established a methamphetamine laboratory on their property is not "acquiescence" in the operation of the drug laboratory. Finally, and as discussed in more detail above, the statutory language belies any suggestion that mere knowledge of the presence of children on the property is sufficient to satisfy the "allow" element.

**{¶ 66}** The majority cites our opinion in *Grundy* for the proposition that it is unnecessary that one charged with endangering children under R.C. 2919.22(B)(6) have a special relationship with the child involved or an interest in the property in order to be convicted. The majority also mentions with approval the state's argument that requiring an interest in the property or a special relationship with the involved child would lead to an absurd result such as the hypothetical that one may establish a methamphetamine laboratory in a day care center and escape criminal liability under R.C. 2191.22(B)(6).

**{¶ 67}** Both *Grundy* and the state's hypothetical are inapposite here. First, in *Grundy,* the defendant was a resident of the property where the illegal drug laboratory was located providing him with some physical control over the property. Additionally, and more

significantly, in both *Grundy* and the state's hypothetical, the actor was responsible for the establishment and operation of the illegal drug manufacturing operation. I do not necessarily disagree that one who establishes and operates an illegal drug manufacturing operation on a property where a child is present "allows" the child on the property, as such person may prevent the violation by not operating the drug laboratory. In any event, neither *Grundy* nor the state's hypothetical provide any guidance as appellant neither established nor operated the methamphetamine laboratory here. Appellant clearly enjoyed the product of the illegal drug manufacturing operation as he performed chores on the property in exchange for finished methamphetamine. Nonetheless, appellant was nothing more than a lackey. He did not have the authority or power to halt or end the illegal drug manufacturing operation.

{¶ 68} The definition of "allow" in either the Black's Law Dictionary or the Merriam-Webster's Online Dictionary as set forth earlier likewise does not support the majority's finding that appellant allowed the children to be on the property. Appellant did not "sanction, either directly or indirectly," "acquiesce in," or "tolerate" the children's presence on the property. Nor did appellant "permit," "forbear or neglect to restrain" the children to be on the property. Appellant was merely aware that someone's children were present on a third party's property where that third party operated a methamphetamine laboratory.

{¶ 69} There are apparently no decisions construing what constitutes "allow" for purposes of R.C. 2919.22(B)(6). However, a review of decisions involving convictions under the statute is instructive. *See Wyatt*, 2014-Ohio-3009 (defendant, the co-defendant to appellant here, was the owner of the property upon which the methamphetamine was being produced and the operator of the laboratory); *State v. Highfield*, 12th Dist. Brown No. CA2013-05-007, 2014-Ohio-165 (defendant established and operated the methamphetamine laboratory); *Bailey*, 2011-Ohio-6526, a case cited by the majority (defendant was a resident of the premises where the methamphetamine manufacturing was occurring, was left in

charge of the children, and was connected to the manufacture of methamphetamine or the assembly of chemicals for that purpose); *McDade*, 2007-Ohio-749 (defendants were the parents of the involved children and were operating the methamphetamine laboratory); *State v. Crosby*, 5th Dist. Fairfield No. 13-CA-86, 2014-Ohio-3691 (defendant was the parent of the child and residing in the home where methamphetamine was being produced); *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634 (defendant, the parent of the children involved, resided at the home where the methamphetamine was manufactured and established and operated the methamphetamine laboratory); *State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604 (defendant resided in the residence and operated the methamphetamine laboratory); *State v. Lerch*, 9th Dist. Summit No. 26684, 2013-Ohio-5305 (defendant moved her child into the home where methamphetamine was being manufactured); and *State v. Campbell*, 11th Dist. Ashtabula No. 2013-A-0047, 2014-Ohio-972 (defendant resided at the residence where the methamphetamine laboratory was located and operated the laboratory).

{¶ 70} In all of these cases, the defendant had some interest in the property where the illegal manufacturing of drugs was occurring by way of residence there or otherwise, had a custodial, parental, or in loco parentis relationship with the children involved, was involved with the establishment or operation of the illegal drug laboratory, or had some combination of the foregoing. Here, none of those factors is present.

{¶ 71} In order to "allow" something, one must have a legal or practical ability to prevent it. It defies logic that one can be charged with allowing something he or she is powerless to prevent. I suggest, that at a minimum, satisfaction of the "allow" element of R.C. 2919.22(B)(6) requires some showing that the accused has some authority to exclude persons from the property where an illegal drug laboratory is located, some relationship with the children involved pursuant to which the accused has the legal or practical authority to

- 23 -

remove the children from the premises, or involvement with the establishment or operation of the illegal drug laboratory such that he may cease its operation. Here, it was only proven that appellant was aware of the presence of the children on the property where methamphetamine was being manufactured. This evidence is insufficient to satisfy the "allow" element of R.C. 2919.22(B)(6).

{¶ 72} I do not disagree with the majority's characterization of appellant as something other than "an innocent bystander" in this situation. However, the trial court and this court are not called upon to determine whether appellant enjoys general innocence here, but rather, whether he engaged in conduct specifically proscribed by the statute.

{¶ 73} I would therefore reverse the trial court's denial of appellant's Crim. R. 29 motion for acquittal as set forth in the first assignment of error and discharge appellant (thus rendering all other assignments of error moot).

{¶ 74} With regard and respect for my colleagues in the majority, I dissent.